UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JASON SETH PERRY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   No. 2:20-cv-00624-JRS-MG |
| | ) |
| WARDEN, | ) |
| | ) |
| Respondent. | ) |

**ORDER GRANTING PETITIONER'S PENDING MOTIONS,
DENYING PETITION FOR A WRIT OF HABEAS CORPUS,
AND DIRECTING FINAL JUDGMENT**

Jason Perry's petition for a writ of habeas corpus challenges his conviction in prison disciplinary case WVS 20-07-0023. Specifically, Mr. Perry was found guilty of a violation of Indiana Department of Correction (IDOC) Adult Disciplinary Code A-117, assault on staff.

### I. Procedural History and Petitioner's Pending Motions

Because the procedural history of Mr. Perry's evolving habeas petition is important to the Court's consideration of his raised grounds for relief, the Court briefly outlines Mr. Perry's amendments to his petition. As a preliminary matter, the Court first resolves Mr. Perry's pending motions before addressing the merits of his arguments.

### A. Amendments to Petition and Motion to Amend Petition Dkt. [22]

Mr. Perry filed his initial petition on November 25, 2020. Dkt. 2. He then filed an amended petition on December 21, 2020. Dkt. 8; dkt. 9. The Court accepted Mr. Perry's amended petition which raised three grounds for relief. Dkt. 9. Mr. Perry argued that the disciplinary hearing officer (DHO) that heard his case was not impartial, that he was denied video evidence, and that an unverified witness statement by another staff member, Officer B. White, was presented and

1

improperly considered against him even though he did not ask for any witnesses and was not notified of any such witness statement when he was notified of the charge during screening. *Id.*

On February 5, 2020, Mr. Perry filed a "submission of previously filed petition." *See* dkt. 14. It raises the same three grounds as his first amended petition and adds a "ground 4" that he was refused advanced notice of the full list of witnesses against him. *Id.* at 5. He supports this added ground by raising the same factual allegations regarding Officer B. White's witness statement. *Id.* Mr. Perry does not identify specific issues about any other witnesses. The Court finds that the addition of "ground 4" provides little to no difference in argument from his first amended petition. Rather, the Court construes that the argument is encompassed by Mr. Perry's third ground. That is, that the DHO considered Officer B. White's witness statement, and Mr. Perry's argues that he was not notified about this prior to his disciplinary hearing.

On February 22, 2021, the respondent filed his return to order to show cause. Dkt. 17. The respondent addresses impartiality of the DHO, denial of evidence, and Officer B. White's witness statement, as the Court will further discuss in its analysis on the merits. The return does not specifically acknowledge Mr. Perry's newly labeled "ground 4."

On March 4, 2021, Mr. Perry filed another motion to amend his petition. Dkt. 22. In this motion, Mr. Perry clarifies that as it relates to his ground 4, he is not raising issue about receiving 24-hours' advanced notice of the charges against him but is arguing that he was denied advanced notice of all of the witnesses "against him." *Id.* at 1; dkt. 22-1 at 5 (Ground 4: "Refusal to allow me to prepare my case for hearing by denying me a notice of the full witnesses against me."). Mr. Perry's motion to amend, dkt. [22], is **GRANTED TO THE EXTENT** that the Court considered this motion and its arguments in the Court's analysis on the merits. The Court finds that Mr. Perry's argument is not all that different from his previous iterations, as it relates to Officer B. White or

any other witnesses that he claims he was not provided notice of prior to his hearing. Thus, additional briefing from the respondent regarding Mr. Perry's ground 4 was not necessary.

### B. Motions to Update Traverse and of Notice of Additional Authority Dkts. [24], [28]

Mr. Perry filed his reply to the respondent's return on March 8, 2021. Dkt. 23. A week later, Mr. Perry filed a motion to update this reply with additional case law and argument. Dkt. 24. Mr. Perry's motion to update his traverse, dkt. [24], is **GRANTED TO THE EXTENT** that the Court has considered this filing in its ruling on the merits.

On September 28, 2021, Mr. Perry filed a motion to notify the Court of additional authority in support of his petition. Dkt. 28. Mr. Perry's motion, dkt. [28], is **GRANTED TO THE EXTENT** that the Court has considered this filing in its ruling on the merits.

## II. Review of Habeas Petition

Mr. Perry seeks relief from his disciplinary conviction through a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, Mr. Perry's petition is **DENIED**.

### A. Legal Standard

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

**B. Disciplinary Proceeding**

Officer Hamburg wrote the following conduct report, charging Mr. Perry with violating Code A-117, assault on staff:

> On 7-27-20 at approx. 1055 A.M. while serving the B-East 500 range for lunch chow, I C/O Hamburg was serving Offender Perry, Jason #138925 who is assigned to cell B-506. When I lowered the food slot on B-506 to serve offender Perry his tray, Perry then began to reach his hands out and grabbed my wrist. I was then able to pull away from Perry and close his food slot without any further incident.

Dkt. 17-1.

Mr. Perry was notified of the charge on August 4, 2020, and he pled not guilty and did not request to call any witnesses. Dkt. 17-2. He did, however, request video of the incident outside of cell B-506 from 10:40 a.m. until 11:15 a.m. "to show that I didn't grab his wrist and to show he was pulling the tray away from me as I was pulling the tray in." *Id.* Mr. Perry was unable to sign the screening report because he was in segregation. *Id.*

Mr. Perry's disciplinary hearing was twice postponed in order for review of the video to be completed. Dkt. 17-5. Mr. Perry was not allowed to view the video for safety and security of the facility, but a video summary was prepared by the DHO:

> 10:50:12am – time on video – Officer Hamburg enters carrying Kosher food trays goes to cell 501 and 503 opens their cuff ports and gives them trays and secures each cuff port, stops and talks to cell 502 and then exits the range.
>
> 10:53:22am – Officer Hamburg enters range carrying food trays goes to cell 502, opens cuff port, passes tray, and secures cuff port, goes to cell 504 and 505, opens cuff ports sets trays on cuff ports
>
> 10:54:43am – Officer Hamburg is at cell 506 with two food trays in his hands, appears to be opening cuff port
>
> 10:54:45am – Camera freezes
>
> 10:55:18am – Camera resumes – Officer Hamburg at cell 506 cuff port is closed and he has a food tray in his hand. There is one food tray sitting on the cuff port of

4

>the inside recreation door. Officer Hamburg grabs the tray off the recreation door
>and walks away from cell 506, then exits the range.

Dkt. 17-8. The DHO attested that parts of this footage were frozen because "[t]he camera only records when it detects movement and it is common for the camera to freeze." Dkt. 17-9. The Court has reviewed the video filed *ex parte* and agrees that it does not show the incident described in the conduct report and that the camera freezes at various times.

Officer B. White provided a witness statement and attested that he "saw [Mr. Perry] grab Officer Hamburg's arm" while Hamburg "attempted to hand him his lunch tray." Dkt. 17-7; dkt. 17-8.

Mr. Perry's disciplinary hearing was held on August 28, 2020. Dkt. 17-6. Mr. Perry stated that Officer Hamburg did not provide physical evidence that he was assaulted, Officer B. White was not on the range at the time, and the camera suspiciously froze. *Id.* The DHO considered the staff reports, Mr. Perry's statement, the witness statement, and video evidence, noting that the incident was not viewable. *Id.* The DHO found Mr. Perry guilty because she believed the conduct report to be true and accurate and took into account the other evidence presented. *Id.* Mr. Perry's sanctions included deprivation of earned credit time and a demotion in credit earning class. *Id.*

Mr. Perry's administrative appeals were unsuccessful. Dkt. 17-11; dkt. 17-12.

**C. Analysis**

As discussed in Part I, Mr. Perry raises several grounds in his petition which the Court construes as (1) he was denied an impartial decisionmaker, (2) he was denied the ability to present evidence, and (3) Officer B. White submitted a witness statement and Mr. Perry was not provided with notice of any witnesses against him. The Court addresses each ground, in turn.

**1. Impartiality of the DHO**

Mr. Perry argues that the DHO reviewed the video evidence eight days prior to the hearing,

prepared the video summary herself and denied him the ability to review the video. Dkt. 9 at 4. He speculates that it is possible that the DHO somehow altered or destroyed the video. *Id.* He further contends that the DHO was partial because she considered Officer B. White's witness statement. *Id.*

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Here, there is no indication that the DHO was directly or substantially involved in the underlying investigation. Rather, it is within the role of the DHO to review the evidence—including video footage—and it is reasonable for the DHO to prepare a summary of that evidence for the disciplinary hearing. Despite Mr. Perry's contentions otherwise, there is no requirement that the DHO have a witness to review the video or that such video not be reviewed until the date of the hearing. Dkt. 23 at 6. Mr. Perry presents mere conclusory statements that the DHO must have had some predetermined personal knowledge or impressions that she brought into the hearing because of her prior review of the video, or that she must have destroyed or tampered with the video. But these claims are unsubstantiated. Even further, the DHO offered plausible explanation

that the camera only records when it detects motion, and that she had not made alterations to the recording. Dkt. 17-9. Further, though the Court will more thoroughly address Mr. Perry's argument that he was denied evidence below, the DHO's decision to deny his review of the video for safety and security reasons does not itself indicate bias.

To the extent that Mr. Perry argues that the DHO's consideration of Officer B. White's witness statement somehow implicated bias, his argument is unavailing. Officer B. White provided a witness statement, and it is within the purview of the DHO to consider and assign credibility to the evidence in rendering her decision.

Simply put, Mr. Perry has not presented clear evidence to overcome the presumption that the DHO was impartial. Accordingly, he is not entitled to habeas relief on this ground.

### 2. Denial of Evidence

Mr. Perry argues that he was not able to review the video evidence, especially that he could not examine the glitches in the video. Dkt. 9 at 4. Due process affords an inmate in a disciplinary proceeding a limited right to present "evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. But due process is not violated unless the inmate is deprived of an opportunity to present *material*, *exculpatory* evidence. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones v. Cross*, 637 F.3d 841 (7th Cir. 2011), and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008).

The video at issue here is neither exculpatory nor material. The DHO and the respondent explicitly acknowledge that the incident was not viewable. This does not mean that the incident did not occur, and therefore, Mr. Perry is absolved of any assault. Rather, it simply means the

7

video provides no evidentiary support to corroborate or refute the other evidence the DHO considered. Thus, the video does not undermine or contradict the DHO's finding of guilt, and any denial of Mr. Perry's ability to review the video did not violate his due process protections.

Though not clear from the arguments in his petition, to the extent that Mr. Perry argues that he was also somehow denied witness evidence, apart from his argument that he was denied advanced notice of witnesses used against him, his argument fails. In his multiple filings, Mr. Perry repeatedly states that he did not ask for any witnesses. *See, e.g.*, dkt. 22-1 at 5; dkt. 24 at 2; dkt. 23 at 8. Thus, he does not explain how he was denied any requests for witnesses, let alone establish how any denied witness would have provided material and exculpatory testimony in his favor. *Piggie*, 344 F.3d at 678 (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness).

Accordingly, Mr. Perry is not entitled to habeas relief on these grounds.

### 3. Notice of Officer B. White and Other Witnesses

Mr. Perry argues that he did not request any witnesses during the screening process and was not told at this time that Officer B. White provided a witness statement that was unfavorable to him. Dkt. 22-1 at 5-6. He argues that Officer B. White's statement was not dated, was therefore potentially created after the DHO reviewed the video, and was not on a State Form 35447, thus it was unverified and should not have been considered. *Id.* at 5. He contends that he was unable to prepare for his hearing because he was not provided with notice of the witnesses against him. *Id.* at 5-6.

But all of these arguments fail. While Mr. Perry is entitled to a limited ability to present witnesses, the due process protections under *Wolff* and *Hill* do not entitle him to the ability to

exclude witness testimony or evidence collected against him. *See Wolff*, 418 U.S. at 563-67; *Hill*, 472 U.S. at 454. Further, due process requires that an inmate be given advanced "written notice of the *charges* . . . in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564 (emphasis added). There is no dispute that Mr. Perry was adequately notified of the charge against him during the screening process. Due process does not require that Mr. Perry receive advanced notice of *witnesses* in a disciplinary case. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556. The lower courts may not expand the limited array of rights that apply in disciplinary actions. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001). And this Court will not do so here.

To the extent Mr. Perry argues that Officer B. White's witness statement was not in proper form in violation of departmental or facility policy and procedures, Mr. Perry has not stated a cognizable claim. Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

Additionally, there is no indication in the record that the witness statement was created

9

after the DHO reviewed the video and was somehow fabricated. Officer B. White included the date of the incident in his witness statement and attested that he wrote the statement on the day of the incident—July 27, 2020—prior to the disciplinary hearing. Mr. Perry has produced no evidence to the contrary other than his own speculation. But even if he had produced evidence, it is the DHO's role to review the evidence presented and assign credibility to it. For the Court to evaluate whether this evidence should have been presented would be to engage in a re-weighing of the evidence, which is not the Court's role in disciplinary hearing cases. *See Rhoiney*, 723 F. App'x at 348; *Calligan v. Wilson*, 362 F. App'x 543, 545 (7th Cir. 2009).

Accordingly, Mr. Perry has not presented claims of merit regarding the witness statement or notification of witness, and therefore, he is not entitled to habeas relief on this ground.

### III. Conclusion

For the reasons discussed in Part I, Mr. Perry's pending motions at dockets [22], [24], and [28] are **GRANTED TO THE EXTENT** that the Court has considered these filings in its analysis on the merits of Mr. Perry's arguments for habeas relief in this action.

However, "[t]he touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of these proceedings, and there was no constitutional deprivation which entitles Mr. Perry to the relief he seeks. Accordingly, the petition for a writ of habeas corpus must be **DENIED** and the action **DISMISSED** with prejudice. Final judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date:   12/13/2021

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JASON SETH PERRY
138925
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

David Corey
INDIANA ATTORNEY GENERAL
david.corey@atg.in.gov

Natalie Faye Weiss
INDIANA ATTORNEY GENERAL
natalie.weiss@atg.in.gov